# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:96-00051 |
| | ) | JUDGE SHARP |
| | ) | |
| MATTHEW OTIS CHARLES | ) | |

## MEMORANDUM

The efficacy of Defendant Matthew Otis Charles's pending "Petition for Reduction in Sentence" (Docket No. 176) hinges on whether his purported career-offender status factored into the 420-month sentence imposed by Judge Higgins. The Government argues it did and that Defendant is entitled to no relief. Defendant argues it did not and that he should therefore be resentenced based upon a United States Sentencing Guideline ("USSG" or "Guideline") range of 292 to 365 months.

## I.

On September 20, 1996, a jury found Defendant guilty of conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846 (Count 1); making false statements in relation to the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) (Counts 2 & 3); unlawfully distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 4 & 7); and unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 5 & 8). On December 23, 1996, the Presentence Investigation Report ("PSR") was filed.

In the PSR, the Probation Officer grouped the drug offense (Counts 1, 4 & 7) and the gun offenses (Counts 2, 3, 5 & 8) for purposes of calculating the combined offense level under the Guidelines. For the group comprising the three drug offenses, the Probation Officer arrived at an

1

adjusted offense level of 38. This was derived from a base offense level of 34 under § 2D1.1(c)(1) for the total drug quantity of 216 grams of crack cocaine, to which was added a two-level weapon enhancement under § 2D1.1(b)(1), and a two-level enhancement for obstruction of justice under § 3C1.1.

For the group comprising the four firearm offenses, the Probation Officer arrived at an adjusted offense level of 28. This was based upon a base offense level of 24 under § 2K2.1(a)(2), to which was added two points pursuant to § 2K2.1(b)(1)(B) because the offenses involved three or more firearms, and two points pursuant to § 3C1.1 for obstruction of justice.

The combined offense level under § 3D1.4 for the two groups became 38. This was because the § 2D1.1 offense level of 38 for the drug counts was higher than the § 2K2.1 offense level of 28 for the gun counts, but the ten-level gap between the two offense levels required no further increase under § 3D1.4(c).

The Probation Officer also determined that Defendant had 17 criminal history points, placing him in Criminal History Category VI. With a total offense level of 38 and a Criminal History Category VI, the Guideline range was 360 months to life.

In the PSR, the Probation Officer discussed possible enhancements under Chapter Four of the Guidelines. He initially wrote that "[t]he defendant *appears* to meet the criteria for both career offender and armed career criminal as defined by the guidelines." ((Docket No. 91, PSR ¶ 64) (emphasis added). However, in the next three paragraphs he wrote:

> **Career Criminal Provision:** In accordance with the provisions found in U.S.S.G. § 4B1.1, because the defendant was at least 18 years of age at the time of the instance offenses, the instant offenses include a felony controlled substance offense, and the defendant has at least two prior felony convictions as detailed below for crimes of violence, [Defendant] is a career criminal and the adjusted offense level is 38, the higher offense level otherwise applicable than the lower offense level specified in the

career offender table.

Pursuant to U.S.S.G. § 4B1.4(a), a defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal. If said enhancement applies, the offense level is the greatest of the options listed under Subsection b. In this case, the offense level applicable from Chapter 2 and 3 is the greater of the options available.

The criminal history category for an armed career criminal is determined by the options listed under Subsection c of U.S.S.G. § 4B1.3. In this case, the greater of the criminal history assessments is determined by the enhancement for a career offender. If a defendant is subject to the career offender enhancement under U.S.S.G. § 4B1.1, the criminal history category in every case shall be Category VI.

(Id. ¶¶ 65-67).[1]

The Government did not object to the PSR. For his part, Defendant voiced several objections, none of which challenged the language relating to the career-criminal provision. Instead, he raised three objections relating to the amount of crack cocaine to be considered for purposes of the guideline calculations, asserting that there was no evidence of a drug offense on December 6, 1995, and objecting to the inclusion of any amount of crack cocaine subsequent to November 22, 1995. Defendant also objected to an enhancement for obstruction of justice and to a two-level increase under § 2D1.1(b)(1) for using a firearm during and in relation to a drug-trafficking crime.

The Probation Officer recommended that Defendant's objections be overruled and that he be sentenced at the low end of the guideline range. The Government sought a higher sentence primarily because Defendant was responsible for supplying a large amount of crack cocaine to soldiers at Fort Campbell. As noted, Judge Higgins sentenced Defendant to 420 months

---

[1]Although the Probation Officer noted that the criminal history category for a career offender is VI, he also found that Defendant had 17 criminal history points, and that "[a]ccording to the Sentencing Table (Chapter Five, Part A), thirteen or more criminal history points establish a criminal history category of VI." (Id. ¶ 84).

imprisonment.[2]

## II.

"Normally, federal courts cannot disturb or recalculate a prisoner's sentence once it is finally imposed[.]" United States v. Blewett, 746 F.3d 647, 665 (6th Cir. 2013). There are limited exceptions to this rule found in 18 U.S.C. § 3582(c), but "'[u]nless the basis for resentencing falls within one of the[se] specific categories . . . , the district court lack[s] jurisdiction to consider [the defendant's] request.'" United States v. Williams, 607 F.3d 1123, 1125 (6th Cir. 2010) (quoting United States v. Smartt, 129 F.3d 539, 541 (10th Cir. 1997)).

So far as relevant, the statute provides:

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). Under that provision, a defendant is eligible for a sentence reduction if "(1) his sentence was 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' § 3582(c)(2), and (2) the amendment on which he relies 'ha[s] the effect of lowering the defendant's applicable guideline range,' USSG § 1 B1.10(a)(2)(B)." United States v. Hameed, 614 F.3d 259, 260 (6th Cir. 2010) (quoting USSG § 1B1.10(a)(2)(B)).

On August 3, 2010, the Fair Sentencing Act ("FSA") took effect. "The Act increased the

---

[2] Specifically, the sentence was 420 months on Count 1, 420 months on Count 4 (to run concurrently with Count 1), 420 months on Count 7 (to run concurrently with Counts 1 and 4), 120 months on Count 2 (to run concurrently with Counts 1, 4, and 7), 120 months on Count 3 (to run concurrently with Counts 1, 4, 7, and 2), 180 months on Count 5 (to run concurrently with Counts 1, 4, 7, 2 and 3), and 180 months on Count 2 (to run concurrently with Counts 1, 4, 7, 2, 3, and 5).

4

drug amounts triggering mandatory minimums for crack trafficking offenses [and] had the effect of lowering the 100–to–1 crack-to-powder ratio to 18–to–1." Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). Thereafter, the Sentencing Commission promulgated new Guidelines that took effect on November 1, 2011.

Defendant argues that under the revised Guidelines, his guideline range is 292 to 365 months. This is based upon a base offense level under § 2D1.1 of 30 (for 216 grams of crack cocaine) to which is added the two-level weapon enhancement under § 2D1.1(b)(1), and the two-level obstruction of justice enhancement under § 3C1.1, resulting in an adjusted offense level of 34 for his crack cocaine offenses. That figure remains higher than the 28 offense level for the firearm offenses, but one additional level is added because the group offense level for those crimes is 5 to 8 levels lower than the group offense level for the crack cocaine offenses. As a consequence, the total offense level becomes 35 and, with a Criminal History Category VI, the new guideline range of from 292 to 365 months is substantially lower than the 360 months to life as originally calculated in the PSR.

In response, the Government does not quarrel with Defendant's calculation of the total offense level under the revised guidelines. Instead, it argues that Defendant is not entitled to relief "[b]ecause Defendant is a career offender and was sentenced as such," and "[t]he Sixth Circuit has consistently held that defendants who are sentenced as career offenders are not eligible for sentence reductions based on the revised calculations regarding crack cocaine." (Docket No. 181 at 4) (citing, United States v. Payton, 617 F. 3d 911, 914 (6th Cir. 2010) and United States v. Perdue, 572 F.3d 288 at 289-90 (6th Cir. 2009)); see also United States v. Webb, 2014 WL 3702443, at *6 (6th Cir. July 28, 2014) ("The career offender guidelines were not subsequently lowered [by the FSA],

5

and therefore, § 3582(c)(2) cannot apply to provide a sentence reduction for Defendant."). It also argues that as a career offender, Defendant had a total offense level of 37 and with a criminal history category VI faced a possible exposure of 360-months to life imprisonment – the same exposure he faced under the § 2D1.1 calculations for the crack cocaine group.

### III.

"In Freeman v. United States, ––– U.S. –––, 131 S. Ct. 2685, 180 L. Ed.2d 519 (2011), Justice Sotomayor, whose opinion represents the binding decision of the split court, see United States v. Thompson, 714 F.3d 946, 949 (6th Cir. 2013), determined that '[t]o ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment.'" United States v. Tate, 2014 WL 2922697, at *3 (6th Cir. June 27, 2014) (quoting Freeman, 131 S. Ct. at 2695). In determining whether a sentence was 'based on' a subsequently lowered guideline range in a plain-meaning sense of the words, [a court] must consider whether 'the original sentence was *in fact*, 'based on' such a range, . . . ; that is [a court] look[s] to 'what the district court actually said and did at the original sentencing.'" Hameed, 614 F.3d at 264 (emphasis in original).

In arguing that Defendant was sentenced as a career offender, the Government points out that Judge Higgins adopted the factual findings in the PSR and that Defendant failed to object to his being given that status in the PSR. However, the PSR was ambiguous at best because it first stated that Defendant *appeared* to meet the criterion as a career offender, but in the next breath stated that Defendant *was* a career offender for purposes of § 4B1.1. Tellingly, and contrary to the general practice in this district when a career-offender calculation is made, the Probation Officer did not specify which offenses from Defendant's lengthy criminal history were the qualifying felony

6

convictions for purposes of the career-criminal enhancement. Nor did the Probation Officer determine what Defendant's offense level would be under the career-offender guidelines.

In any event, and notwithstanding the fact that "[b]y failing to object to the presentence report, [a defendant] accept[s] all of the factual allegations contained in it," United States v. Vonner, 516 F.3d 382, 385 (6th Cir.2008)), "[w]hether a defendant is a career offender and whether a crime is a crime of violence under the guidelines are legal questions," United States v. Cooper, 739 F.3d 873, 877 (6th Cir. 2014); see also United States v. Lockett, 359 F. App'x 598, 608 (6th Cir. 2009) ("What constitutes the proper procedure when calculating a career-offender guideline range is a legal question."). Thus, the fact that Judge Higgins accepted the factual statements in the PSR is not controlling on the issue of whether Defendant was sentenced based on his career-criminal status.

Looking to what Judge Higgins said and did at sentencing, it is clear that the amount of crack cocaine under 2D1.1 "served as the basis or foundation" for the 420-month sentence. To begin with, Judge Higgins specifically found that "the total offense level is 38, the criminal history category is Roman numeral six . . . and that the Armed Career Criminal Act, pursuant to 18, United States Code, Section 924(e), is applicable to counts five and eight." (Docket No. 96, Trans. of Sent. Hrg. at 45). Later, Judge Higgins reiterated his finding that Defendant was an armed career criminal, but made no such finding regarding Defendant being a career offender. In fact, Defendant's career-offender status does not appear to have been mentioned by Judge Higgins at all.

Further, the total offense level of 38 found by Judge Higgins is in keeping with the calculations under § 2D1.1 – not the total offense level of 37 that would have been derived from § 4B1.1. Even though Defendant's criminal history was found to be in Category VI and all career offenders are deemed to be in that category, Defendant also met that criminal history category

7

independent of a career-offender designation because he had 17 criminal history point.

Additionally, the focus of the arguments at sentencing was on the amount of drugs used in the calculation and whether Defendant was subjected to enhancement for obstruction of justice or a two-level increase for the use of a firearm. In fact, after the Assistant United States Attorney stated that "[t]he guideline range is largely figured through the drug quantity," Judge Higgins observed that "it's counts one, four and seven that drive this sentence," to which the Assistant United States Attorney responded, "one, four and seven, which is correct, which is the crack cocaine." (Docket No. 96, Trans. of Sent. Hrg. at 42).

Given this record, the Court finds that "the original sentence was in fact" based upon § 2D1.1 and the amount of crack cocaine attributable to Defendant. Support for this conclusion can be found in United States v. Turnley, No. 96-cr-00120-5, Docket No. 671 (M.D. Tenn. Feb. 13, 2009).

In Turnley, the defendant filed for a reduction in sentence under § 3142 because of Amendment 706 to the USSG which provided a two-level reduction in the base offense level for crack cocaine offense. The Government opposed the motion because the defendant was deemed to be a career offender in the PSR.

In determining that resentencing was appropriate, Judge Wiseman found that the Government was "simply incorrect in claiming that the Court previously adopted the Probation Officer's characterization of [defendant] as a career offender" because the Court expressly declined to consider whether defendant was a career offender at sentencing since it would have no effect on the applicable sentencing range. (Id. at 6). In doing so, Judge Wiseman noted that there was "some ambiguity insofar as, on the one hand, the Court stated that it adopted the findings of fact set forth in the PSR, which was inconsistent with the specific refusal to consider the career-offender

8

designation" at sentencing, and "the fact remains that the Court never made a finding that [Defendant] was a career-offender for purposes of sentencing." (Id. at 7).

Here, while Judge Higgins did not specifically state that he was declining to consider whether Defendant was a career offender, both he and the parties treated the issue as moot in light of the fact that the Guideline range under § 2D1.1 was higher than it would have been under §4B1.1. Further, but unlike Turnley, the PSR in this case was ambiguous in regard to whether Defendant should be deemed a career offender because it first stated only that he "appeared" to meet the requirements and never identified what prior felonies served as the predicate for that designation or set the offense level for the career offender designation. More importantly, and as in Turnley, Judge Higgins never found that Defendant was a career offender, but made it a point to state on two occasions that he found him to be an armed career criminal.

## IV.

"Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled," and there is "no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments." Dillon v. United States, 560 U.S. 817, 828 (2010). Rather, the statute says that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2). That is, "[r]egardless of a defendant's eligibility for resentencing, the district court's decision to modify a sentence under § 3582(c)(2) is discretionary[.]" United States v. Curry, 606 F.3d 323, 327 (6th Cir. 2010); see also United States v. Horn, 679 F.3d 397, 408 (6th Cir. 2012) (a defendant "has no constitutional right to have his sentence reduced under 18 U.S.C. § 3582(c)(2)); United States v. Cunningham, 554 F.3d 703, 707

9

(6th Cir. 2009) ("a section 3582(c)(2) modification is discretionary, even for a defendant whose Guideline range has been retroactively lowered"); U.S.S.G. § 1B1.10 cmt. background (noting that a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

Under Section 3582(c)(2), if a court determines that a defendant is eligible for a sentence reduction, "the court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances." United States v. Greenwood, 521 F. App'x 544, 547 (6th Cir. 2013). In exercising that discretion, the Sixth Circuit has observed:

> The commentary accompanying § 1B1.10 *requires* the court to consider public safety factors, and *permits* the court to consider post-sentencing conduct in whether a reduction in the defendant's term of imprisonment is warranted. U.S.S.G. § 1B1.10, cmt. (n. 1(B)(ii)–(iii)). Thus, the district court *is* required to consider both the § 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Curry, 606 F.3d at 330 (quoting U.S.S.G. § 1B.10 cmt. n. 1(B)(ii)). The court *may*, but *is not* required to, consider a defendant's post-sentencing conduct.

Id. (emphasis in original).

The undersigned, of course, was not the sentencing judge, and, at present, the Court has not formed a definite opinion as to whether a sentence reduction is appropriate. On the one hand, Judge Higgins found a very lengthy sentence to be warranted, concluding his remarks at sentencing by stating:

> The Court has previously found that the Armed Career Criminal Act is applicable in this case. This defendant has a particularly violent history, and the sentence is imposed for the purposes of punishment, deterrence, and incapacitation. This defendant is one who has demonstrated by his actions that he's a danger to society and simply should be off the streets, and incapacitation serves that purpose of sentencing, to remove him from society.

(Docket No. 96 at 50). On the other hand, Defendant has now been incarcerated for almost two

decades. Whether he still poses the same sort of danger and threat is an open question.

The Court will set this matter for hearing to afford counsel an opportunity to provide input as to how the Court should best exercise its discretion. See, United States v. Collier, 44 F. App'x 522, 524-25 (6th Cir. 2011) (under § 3582(c), "the district court could have considered post-sentencing conduct in deciding whether to reduce a sentence . . . and was not prohibited from conducting an evidentiary hearing"). In setting the matter for hearing, the Court makes the following observations.

First, "[g]iven the limited scope and purpose of § 3582(c)(2) . . . proceedings under that section do not implicate the interests identified in Booker,"[3] Dillon, 560 U.S. at 828, meaning that the Guidelines are not merely advisory and any sentence must be within the amended guideline range, United States v. Turnley, 627 F.3d 1032, 1036-37 (6th Cir. 2010). Second, Section 3582(c) does not authorize "a plenary resentencing proceeding," Dillon, 560 U.S. at 826; thus, "[a]n issue is not cognizable under § 3582(c)(2) if it does not involve a sentencing range that has been lowered by the retroactive application of an amendment to the sentencing guidelines," United States v. Dyer, 478 F. App'x 308, 309 (6th Cir. 2012), meaning that the Court will not re-visit the issue of whether Defendant is properly deemed a career offender. See U.S.S.G. § 1B1.10 (stating that the court shall substitute only the amended range and "leave all other guidelines application decisions unaffected"); United States v. Mills, 435 F. App'x 489, 492 (6th Cir. 2011) ("'aspects of [a] sentence that ... were not affected by the Commission's amendment to § 2D1.1 . . . are outside the scope of the proceeding authorized by § 3582(c)(2),' and should not be addressed by a district court") (citation omitted). Third, because "[s]entence reductions under 18 U.S.C. § 3582(c) are not full sentencing proceedings

---

[3] United States v. Booker, 534 U.S. 220 (2005)

. . . Fed. R. Crim. P. 43(b)(4), unlike Fed. R. Crim. P. 32(i)(4)(A)(ii), does not provide a right of allocution; on the contrary, it states that '[a] defendant need not be present ... [where] [t]he proceeding involves the ... reduction of sentence under . . . 18 U.S.C. § 3582(c).'" United States v. Howard, 644 F.3d 455, 459 (6th Cir. 2011).

## V.

On the basis of the foregoing, Defendant's "Petition for Reduction in Sentence" will be granted insofar as he asserts that his original sentence was based upon § 2D1.1 of the Guidelines.[4] The Court will hold a hearing to determine whether it should exercise its discretion to grant Defendant a sentence reduction and re-sentence Defendant within the Revised Guideline range.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[4] With this ruling, Defendant's previously filed *pro se* Motion to Reduce Sentence Based Upon the Sentencing Act of 2010 will be denied as moot.